# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 29, 2012

## STATE OF TENNESSEE v. EDWARD L. BAIRD

**Appeal from the Circuit Court for Blount County**
**Nos. C-18929, C-19798     Tammy Harrington, Judge**

---

### No. E2011-01763-CCA-R3-CD - Filed May 23, 2012

---

Appellant, Edward L. Baird, entered guilty pleas without recommended sentences to three felony offenses involving distribution of controlled substances. Following a sentencing hearing, the trial court ordered appellant to serve an effective sentence of ten years in confinement. Appellant contests the manner of service of his sentence, arguing that the trial court should have ordered split confinement. Finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J., joined. JERRY L. SMITH, J., not participating.

J. Liddell Kirk, Knoxville, Tennessee (on appeal); and Mack Garner, District Public Defender, Maryville, Tennessee (at trial), for the appellant, Edward L. Baird.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Matthew Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Procedural History

A Blount County Grand Jury indicted appellant on three felony counts arising from two different cases. The offenses included one count of delivery of a Schedule III controlled substance, a Class D felony; one count of sale or delivery of a Schedule II controlled

substance, a Class C felony; and one count of maintaining a dwelling where controlled substances are used or sold, a Class D felony. Appellant entered guilty pleas without recommended sentences to all three counts on June 10, 2011. The court held a sentencing hearing on August 8, 2011. At the conclusion of the hearing, the trial court sentenced appellant to the minimum sentences for a Range III, persistent offender. Those sentences were ten years for sale or delivery of a Schedule II controlled substance and eight years each for the remaining offenses. The court ordered all three sentences to be served concurrently. After consideration of the applicable law and the evidence presented at the sentencing hearing, the trial court ordered the service of appellant's sentence in confinement. Appellant filed a timely notice of appeal on August 10, 2011.

## II. Facts from the Sentencing Hearing

David Mendez, an officer with the Blount County Drug Task Force, testified that on November 4, 2009, he was working undercover. He visited appellant's home, where he purchased one oxycodone pill from appellant for $25. During the transaction, Officer Mendez observed several different types of pills in appellant's possession. Appellant kept the pills in a safe located in a bedroom. Officer Mendez subsequently purchased ten units of hydrocodone from appellant on November 19, 2009, for $60.

The next witness was Robert Nease, a deputy with the Blount County Sheriff's Office. Deputy Nease stated he had served eleven years with the drug task force and twenty-eight years in law enforcement. According to Deputy Nease, the drug of choice in Blount County was hydrocodone until approximately two years ago. The new drug of choice for that area is oxycodone, a Schedule II controlled substance. Oxycodone is an opiate, or pain killer. Many of the prescription medication cases worked by the drug task force involve drug diversion, a situation in which a legal medication is diverted to illegal sale on the street. Deputy Nease had observed an increase in prescription abuse and petty crimes in association with the use of oxycodone. Family members are often the victims of thefts and assaults when another family member is using oxycodone. In his experience, most people who sell prescription drugs illegally have no legitimate employment and support themselves either by selling drugs or by some other illegal means.

Appellant testified at the sentencing hearing that he was thirty-seven years old. He had one child, an eighteen-year-old son, and might have been expecting another child. He moved from Michigan to Tennessee when he was four years old. He attended Doyle High School through the eleventh grade. He later received a G.E.D. Appellant completed one semester of education at Pellissippi State Community College. He had supported himself through his adult life by working in the field of general labor, including steel mills and construction. Appellant suffers from rheumatoid arthritis, for which he receives 100%

disability. Doctors have prescribed several different medications for appellant's condition to lessen the pain and inflammation. He also takes prednisone regularly for asthma.

Appellant further stated he became involved with drugs as a child. Around age sixteen, he began to experiment with marijuana, cocaine, and LSD. When appellant was eighteen, he became involved with a group of young men who committed several robberies. According to appellant, his only involvement in the robberies was driving the car. Authorities discovered the robbery ring when they arrested one of the individuals for using a stolen credit card. That individual implicated everyone else.

Appellant pled guilty to the robbery charges and received probation. He admitted he violated his probation once as a result of failing a drug test. Appellant served forty-five days for the violation and the court reinstated his probation. During the remainder of his probation, appellant stopped using drugs. Appellant later received two convictions for driving under the influence. He served his mandatory sentences and completed probation. At some point, appellant resumed taking drugs because of the pain of his rheumatoid arthritis.

Appellant testified that in November 2009, he lived alone in a house he rented in the Five Points area of Maryville. A friend called and said that he knew someone who hurt his back and asked appellant to help him. Appellant tried to help the individual by providing drugs. Appellant knew that it was illegal when he sold the drugs to the individual. He was arrested for the offense and his family paid his bond. At the time of the offenses, appellant was supporting himself with his disability check. When he was arrested on the grand jury indictment, his family was not able to make his bond.

Appellant further testified he had not taken illegal drugs in approximately one year. He had not misused his prescription drugs in approximately ninety days. The only time he misused his prescription medications was when his pain was severe. Appellant stated he could pass a drug screen. Appellant did not believe that he had a drug problem at the time of the sentencing hearing, although he admitted he had a problem with drugs in the past. He claimed that if granted probation, he would stay out of trouble and would follow all of the court's orders.

At the beginning of the sentencing hearing, the parties agreed that appellant should be sentenced as a Range III, persistent offender. The parties further agreed that the Class C felony carried a sentence range of ten to fifteen years. The sentence range for the remaining Class D felonies was eight to twelve years. The court sentenced appellant to the minimum sentence on each count, with all sentences to be served concurrently with each other. Thus, appellant received an effective ten-year sentence to be served at forty-five percent.

Following a thorough consideration of all of the necessary factors, the trial court ordered appellant to serve his entire sentence in confinement. Appellant does not contest the length of his sentence but argues that he should have been granted enhanced probation or split confinement.

In deciding the appropriate sentence, the trial court considered the evidence presented at the sentencing hearing; the presentence report; the principles of sentencing; the sentencing alternatives; the nature and characteristics of the criminal conduct involved; the evidence and information pertaining to enhancing and mitigating factors; statistical evidence provided by the Administrative Office of the Courts as to sentencing practices for similar offenses; appellant's statements; and proof concerning rehabilitation. The court found one enhancing factor, that the appellant had accrued more convictions than the requisite number to establish his offender range. As a mitigating factor, the trial court found that appellant's conduct neither caused nor threatened serious bodily injury. The trial court further concluded that appellant's case did not mandate consecutive sentences.

The trial court also determined that appellant should not be considered a favorable candidate for probation. In addition to the factors listed above, in ruling on the manner of service of appellant's sentence, the court considered appellant's physical and mental condition and his prior criminal history. The court found that appellant had a history of drug abuse and that several of his criminal convictions involved alcohol or narcotics. The court reviewed whether appellant could be rehabilitated during the probationary period. The court found that based on appellant's testimony regarding his misuse of prescription drugs and his current health condition, appellant presented a high risk of continuing his abuse of prescription medications. In addition, appellant was at a high risk of committing another crime while on probation.

The trial court reviewed appellant's criminal history and probationary history. The court found that appellant violated the terms of probation one time due to a failed drug screen. Aside from that violation, appellant successfully completed all other probationary periods. The court was concerned because appellant repeatedly committed new criminal offenses. The trial court ruled that the interest of society would not be served if appellant received probation, as appellant presented a great risk of engaging in future criminal conduct. The court ruled that due to the fact that appellant is a Range III, persistent offender, a sentence of full probation would depreciate the seriousness of his crime.

III. Analysis

As an initial matter, we address the State's argument that appellant has waived the alternative sentencing issue by failing to include a transcript of the guilty plea hearing in the

appellate record. This court has held that "the guilty plea hearing is the equivalent of a trial, in that it allows the State the opportunity to present the facts underlying the offense." *State v. Keen*, 996 S.W.2d 842, 843 (Tenn. Crim. App. 1999). The court further opined that "[f]or this reason, a transcript of the guilty plea hearing is often (if not always) needed in order to conduct a proper review of the sentence imposed." *Id.* at 844.

In this case, appellant pled guilty without recommended sentences. Disagreement exists among previous opinions issued by this court over whether, on appellate review, we should presume the correctness of the trial court's sentencing determination in the absence of the guilty plea transcript in the record. Some opinions have determined that this court should address the merits of the sentencing determination if a thorough review is possible without the transcript, while other opinions have concluded that an appellant waives the right to a full review of the trial court's sentencing determination by failing to include the guilty plea transcript in the appellate record. *See State v. Anna M. Steward*, No. E2010-01918-CCA-R3-CD, 2011 WL 4346659, at *2-5 (Tenn. Crim. App. Sept. 19, 2011); *State v. Darren Allan Vincent*, No. M2010-02468-CCS-R3-CD, 2011 WL 4346659, at *5 (Tenn. Crim. App. Jan. 20, 2012) (Bivins, J., concurring). *But see Darren Allan Vincent*, 2012 WL 187347, at *2 (majority opinion); *Anna M. Steward*, 2011 WL 4346659, at *5-6 (Tipton, P.J., concurring). *See generally Keen*, 996 S.W.2d at 843-44 (holding that, despite a "bare" record, it was sufficient to reach the merits, but emphasizing the importance of including guilty plea transcript in appellate record).[1] While we acknowledge that, pursuant to the controlling authority of *Keen*, inclusion of the guilty plea transcript is preferred, and is often necessary, we have determined that in this case the record is adequate for a thorough consideration of the merits without inclusion of the transcript of the guilty plea hearing.

At the sentencing hearing, the State presented the testimony of the undercover officer who made the illegal drug purchases from appellant. The officer testified fully regarding the facts underlying the offense. The transcript of the guilty plea hearing is not essential to our determination of the sentencing issue in this case. Further, appellant has raised no allegations of error with respect to the guilty plea hearing. We decline to hold that appellant waived this issue for our review. We further hold that, in this case, the record is sufficient to allow this court to conduct a de novo review, affording a presumption of correctness to the decisions reached by the trial court.

We begin our analysis with the proposition that an appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. *See* Tenn. Code Ann.

---

[1] The Tennessee Supreme Court has granted permission to appeal in a case that may determine this issue. *See State v. Christine Caudle*, No. M2010-01172-CCA-R3-CD (Tenn. Crim. App. Dec. 8, 2011), *perm. app. granted*, M2010-01172- SC-R11-CD (Tenn. April 12, 2012).

§ 40-35-303(a) (2010).  An especially mitigated or standard offender convicted of a Class C, D, or E felony is considered to be a favorable candidate for alternative sentencing in absence of evidence to the contrary.  *See* Tenn. Code Ann. § 40-35-102(6) (2010).  While appellant's ten-year sentence makes him eligible for alternative sentencing, his status as a persistent offender deprives him of favorable consideration for probation.  Tenn. Code Ann. §§ 40-35-102(6)(A), -107(a) (2010).

When reviewing sentencing issues raised by an appellant, including the denial of probation, this court conducts a de novo review, according the trial court's findings a presumption of correctness.  *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008); Tenn. Code Ann. § 40-35-401(d) (2010).  The presumption of correctness is conditioned upon an affirmative showing that the trial court properly considered the sentencing principles, as well as all relevant facts and circumstances.  *State v. Franklin*, 308 S.W.3d 799, 825 (Tenn. 2010) (citing *Carter*, 254 S.W.3d at 344-45).  A trial court's failure to adhere to the well-established guidelines for imposing the sentence will result in a simple de novo review by this court with no presumption of correctness of the trial court's ruling.  *State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004).  Provided the trial court followed the appropriate procedures and imposed a lawful sentence, all of which are supported by the record, "this Court may not modify the sentence, even if actually preferring a different result." *State v. Goodwin*, 143 S.W.3d 771, 783 (Tenn. 2004) (citing *State v. Pike*, 978 S.W.2d 904, 926-27 (Tenn. 1998)).

In challenging the sentenced imposed by the trial court, appellant bears the burden of proving that the sentence is erroneous.  *Franklin*, 308 S.W.3d at 825 (citing Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts (2010); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)).  Appellant does not claim that the trial court failed to follow the correct sentencing procedure or otherwise failed to consider relevant facts and circumstances.  His argument rests solely on the relative lack of seriousness of his present offenses in comparison with other similar drug offenses, and the historical nature of his previous felony convictions.  Appellant has failed to demonstrate that the trial court erroneously denied him probation.

Every sentencing decision by a trial court entails a case-by-case analysis.  *State v. Majid Farraj*, No. W2009-02566-CCA-R3-CD, 2011 WL 4716228, at *4 (Tenn. Crim. App. Oct. 6, 2011) (citing *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995)).  While a trial court must consider several circumstances in determining an appropriate sentence, it is relevant for the court to evaluate whether a sentence of probation would unduly depreciate the seriousness of the offense.  *See State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997);  *Majid Farraj*, 2011 WL 4716228, at *4 (citing *Bingham*, 910 S.W.2d at 456).

A thorough review of the record reveals that the trial court properly followed the statutory procedures and considered all relevant facts and circumstances in denying appellant

probation. By evidence of prior predicate felony convictions, the parties and the trial court agreed that appellant was a Range III, persistent offender. The sentencing court found that appellant had garnered criminal convictions greater than the number of requisite convictions to establish his offender range. The trial court concluded that granting probation to a Range III, persistent offender would depreciate the seriousness of the offenses, especially in light of the violent nature of his previous felony convictions. The court further found the interest of society would not be served by granting appellant probation because appellant posed a high risk of committing additional drug-related offenses due to his admitted abuse of prescription medications and his present health condition. This court agrees with the trial court's determination.

## IV. Conclusion

After a thorough review of the record, this court has concluded that the trial court properly ordered that appellant serve his ten-year sentence in full confinement. Accordingly, the judgments of the trial court are affirmed.

_____
ROGER A. PAGE, JUDGE